IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CROCE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 13-6831 |
| | : | |
| v. | : | |
| | : | |
| WEST CHESTER SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

<u>**MEMORANDUM OPINION**</u>

Smith, J.                                                                                                                April 8, 2015

The plaintiff brings this 42 U.S.C. § 1983 action seeking compensation from the defendant, a Pennsylvania school district, for violating his constitutional rights when he suffered a concussion during a high school football game in 2010. The plaintiff alleges that the defendant deprived him of his bodily integrity under the Due Process Clause of the Fourteenth Amendment. The defendant moves for summary judgment arguing that it may not be held vicariously liable for the actions of its employees, and that the plaintiff has not demonstrated that any of the defendant's policies or practices caused his injuries. There is no factual dispute with regard to the policies and practices of the defendant with regard to the appropriate handling of concussions suffered by student athletes. Accordingly, the defendant is entitled to judgment as a matter of law, and the court will grant the motion.

**I.    ALLEGATIONS AND PROCEDURAL HISTORY**

On November 25, 2013, the plaintiff, William Croce, commenced this action by filing a complaint against the defendant, West Chester School District. Compl., Doc. No. 1. In the complaint, the plaintiff alleges that on October 25, 2010, while he was a tenth grade student at West Chester East High School and a member of the junior varsity football team, he was playing

in a football game when he blacked out for a second on the field after a collision. *Id.* at ¶¶ 4-6. After regaining consciousness, the plaintiff had severe pain in his head and grasped his head with both hands. *Id.* at ¶ 7. He then asked for permission from his coaches to leave the field and they allowed him to leave. *Id.* at ¶ 8.

When he reached the sidelines, the plaintiff told the assistant coach that his head was bothering him. *Id.* at ¶ 9. The coaching or training staff did not examine the plaintiff to determine if he had a concussion or if he needed medical attention. *Id.* at ¶ 10. Near the end of the game, the coach reinserted the plaintiff into the game on a special teams play. *Id.* at ¶¶ 11-12. These types of plays produce the most violent collisions. *Id.* at ¶ 12. During the play, the plaintiff was again knocked unconscious. *Id.* at ¶ 13.

After the game, the plaintiff reported to his mother that he did not feel well. *Id.* at ¶ 14. The next morning, he reported not feeling well to the school's athletic trainer, who asked a young woman to perform an impact test on him. *Id.* at ¶ 15. The plaintiff was told that his scores on the impact test were much lower than his baseline scores. *Id.* at ¶ 17. The school nurse saw him and sent him with instructions to see a doctor immediately. *Id.* at ¶ 18. The plaintiff was feeling dizzy and had headaches, nausea, and difficulty eating and sleeping. *Id.* at ¶ 18. He was seen by several doctors, and "failed all balance and concussion tests and his doctors were unable to find his retina." *Id.* at ¶¶ 19-20. The plaintiff was unable to attend school and was placed on brain rest until mid-December when he was finally cleared to meet with a tutor for one to two hours at a time. *Id.* at ¶¶ 20-21.

As a result of the incident, the plaintiff has had problems with the following: sleep patterns, eating, memory loss, cognition, appetite and nausea, headaches, and academic performance. *Id.* at ¶ 23. Though the plaintiff was an excellent student who attended seminar

and honors-level classes prior to the incident, afterwards he was unable to achieve the same level of academic performance. *Id.* at ¶ 22. The plaintiff's "academic and future life prospects have been altered due to this incident." *Id.* at ¶ 27. For the remainder of his academic career at the high school, the plaintiff's parents had difficulty in getting the defendant to implement the recommended individual education plan, causing the effects of the "assault" to be compounded. *Id.* at ¶ 24.

Based on the aforementioned allegations, the plaintiff asserted causes of action against the defendant under theories of assault and state-created danger. As to the state-created danger theory, the plaintiff alleges that the defendant allowed a situation to exist where the coaches, trainers, and other staff of the junior varsity football team were inadequately prepared to recognize and react to a concussion. *Id.* at ¶ 37. Concerning the assault theory, the plaintiff alleges that the defendant, "knowing that the [his] body was going to suffer a physical insult once he was reinserted into the game on the kickoff team, intentionally caused an assault and battery upon [his] person." *Id.* at ¶ 40.

The defendant filed a motion to dismiss on April 10, 2014, and the court granted the motion as to the assault claim but allowed the plaintiff to proceed on the section 1983 state-created danger claim. Doc. No. 6; 16. After filing an answer to the complaint on January 26, 2015, the defendant filed a motion for summary judgment on January 28, 2015. Doc. Nos. 17, 18. The court denied the motion for failure to conform to Federal Rule of Civil Procedure 56 and the undersigned's policies and procedures, and granted the defendant leave to amend on February 20, 2015. Doc. No. 19. On February 27, 2015, the defendant filed an amended motion for summary judgment. Doc. No. 20. On March 10, 2015, the plaintiff filed a response to the

motion for summary judgment.  Doc. No. 24.  The court heard oral argument on the motion on March 11, 2015.  The motion is now ripe for disposition.

## II.  DISCUSSION

As discussed above, the only remaining claim in this matter is the section 1983 claim, alleging that the school district's conduct constituted a state-created danger that deprived the plaintiff of his bodily integrity under the Due Process Clause of the Fourteenth Amendment.  In its motion for summary judgment, the defendant argues that the court should grant summary judgment in its favor because under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), it may not be held vicariously liable for the actions of its employees, and the plaintiff has not demonstrated that its policy or practice caused, or even contributed to, his injuries.

### A.  Standard of Review – Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial[]'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## II.   ANALYSIS

For the plaintiff's due process claim, he contends that reinserting him into the football game after he sustained the first head injury constitutes deliberate indifference and reckless disregard for his safety, and that this was part of the defendant's custom or policy. He also avers that the coaches, trainers, and other staff and team members were inadequately prepared to recognize and react to a concussion, and that the defendant created this situation.

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658 (1978)). "A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. To prevail on his claim, the plaintiff "must show a 'direct causal link' between the policy and a constitutional violation." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (quoting *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs.*

*Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003)). Additionally, the plaintiff "must show that the municipality acted with 'deliberate indifference' toward the rights of its students." *Id.* (quoting *Brown*, 318 F.3d at 479).

The plaintiff has not shown that the defendant had a policy of ignoring or failing to adequately diagnose, treat, or respond to concussions, nor has he shown that it acted with deliberate indifference toward the rights of its students. To the contrary, the undisputed evidence shows that the defendant had a policy and custom of taking sports safety, including concussion responsiveness and diagnosis, seriously. The sworn statement of the school's head athletic trainer, Mark Grothmann, pertaining to the school's concussion protocol is as follows: An athletic trainer was always present at all football games. Reply of Def. West Chester Area Sch. Dist. to Pl.'s Dep. Interrog. at ¶ 2, 4, Doc. No. 28. The athletic trainers are well-trained in concussion diagnosis and protocols, and all coaches received instruction regarding concussion diagnosis protocol. *Id.* at ¶ 4. In addition, coaches "are instructed to send any child whom they suspect has suffered a head injury straight to the athletic trainer who is on site at the game at all times, so that the athletic trainer can properly evaluate the player for not only a concussion, but for any other suspected head injuries." *Id.*

Furthermore, the school followed the concussion protocols generated via the Consensus Statement on Concussion in Sport: The Third International Conference on Concussion in Sport held in Zurich in November 2008 ("the Zurich Statement"). *Id.* All West Chester East School District players were baseline tested with "ImPact" testing prior to the 2010 junior varsity season. *Id.* at ¶ 5. There was a mandatory screening for all coaches of the United States Department of Health and Human Services CDS Instructional video entitled "Heads up Concussions in High School Sports." *Id.* at ¶ 6. Mr. Grothmann believes that "in his 13 years of

7

serving as the Athletic Trainer at West Chester Area School District, [the plaintiff] is the only student who has alleged that he (or she) told an athletic coach that he (or she) was suffering from headaches or head issues and was re-inserted into a game without being reported to the athletic trainer." *Id.* at ¶ 16. There were nine reported concussions on the varsity and junior varsity football teams combined between August 2006 and May 2010, *id.* at ¶ 8, and there is no evidence to suggest that the coaches and trainers did not follow the aforementioned concussion protocol in each case. There is absolutely no evidence developed through discovery to suggest that the defendant had a policy, practice, or custom of indifference to the health and safety of its students.

The plaintiff has not shown that there is any issue of material fact that warrants sending this matter to a jury. Accordingly, the court will enter judgment in favor of the defendant on the section 1983 claim.

### III.  CONCLUSION

Because the plaintiff has not demonstrated that the defendant's policy, practice, or custom caused his injuries, he fails to meet an essential element of his *Monell* claim, and therefore the defendant is entitled to summary judgment as a matter of law.

An appropriate order follows.

BY THE COURT:


*/s/ Edward G. Smith*
EDWARD G. SMITH, J.